## THE HOME INSURANCE COMPANY, Plaintiff, *v.* MARY HEAD, Defendant.

*Insurance company — right of, to hold real estate purchased upon a foreclosure sale — its title is not divested by a failure to procure the certificate required by chapter 466 of 1853 — service of a summons upon a non-resident infant defendant under section 135 of the old Code.*

The failure of an insurance company, which has purchased real estate upon the foreclosure of a mortgage thereon owned by it, and has held the same for more than five years, to procure within such five years the certificate of the superintendent of the insurance department prescribed by chapter 466 of 1853, does not affect or divest its rights in such real estate, and it may still sell and convey a good title thereto to a purchaser.

Where a summons was served upon a non-resident infant defendant in a foreclosure action, under the provisions of section 135 of the old Code, it was sufficient if, in addition to the required publication, a copy of the summons and complaint were deposited in the post-office directed to the infant at its place of residence.   Personal service of the papers upon the infant, or service by mail or personally upon its father, mother or guardian, was unnecessary.

Submission of a controversy upon an agreed statement of facts.

*E. D. Cowman,* for the plaintiff.

*H. C. Place,* for the defendant.

DYKMAN, J.:

This is a submission of a controversy without action. The plaintiff has entered into an agreement with the defendant for the sale of the premises in question, which she has declined to perform, because she is apprehensive of defects in the plaintiff's title. We are therefore required to decide whether a conveyance from the plaintiff will secure to the defendant a good title to the premises.

The following facts present the first question: The plaintiff held a mortgage on the premises which was foreclosed. On the sale under the judgment Charles A. Esler became the purchaser for the plaintiff and conveyed the same to the company in December 1876, and they have been held by it from that time without the certificate of the superintendent of the insurance department until April 12, 1883, when a proper certificate was obtained.

Chapter 466 of the Laws of 1853 made it lawful for insurance companies to hold such real estate as should be purchased at sales upon judgments obtained on mortgages for security for loans. But the same law also provided that all real estate so acquired, which should not be necessary for the company in the transaction of its business, should be sold and disposed of within five years after the acquisition of the title thereto, unless the certificate of the comptroller for whom the superintendent of the insurance department is now substituted (chap. 366, Laws of 1859) shall be procured, that the interest of the company would suffer materially by a forced sale thereof. Such certificate was not obtained in this case within the five years, but was obtained later. Does the failure to obtain the certificate invalidate or affect the title of the company in any way. It will be seen that no such consequences are provided for in the law itself. It does not assume to divest the title of the company or suspend its power of sale after that time. It simply imposed on the company a duty to sell within five years or procure the certificate. No penalty is attached for disobedience and no negative words forbidding or prohibiting the sale thereafter, and as neither such penalty nor prohibition are expressly imposed or created, they cannot be raised by implication. (*Health Department* v. *Knoll*, 70 N. Y., 536.)

The title to this property was absolute in the company, and its power of alienation was without limit. A power of sale bestowed upon trustees or other parties may be limited in its exercise by time

or events, but no such limitation can be imposed by the legislature on the owner. Such an attempt would be a plain usurpation of the right of property. The intention of this law was doubtless to impose on these companies a duty to dispose of its real estate not necessary for the transaction of its business as soon after its acquisition as was consistent with its interests. The object being to prevent the accumulation of land by companies organized for purposes of insurance.

Our conclusion is, therefore, that the title of the company is unaffected by the omission to procure the certificate.

There is another question. The summons in the foreclosure action was served on some of the defendants by publication, the order therefor being made March 12, 1873. After the usual publication for six weeks the order required a copy of the summons and complaint directed to the defendant Caroline Harris at Westport, Connecticut, to be deposited in the post-office in the city of New York and the postage paid thereon. This was done. But Caroline was then an infant under fourteen years of age, and no copy was sent to or served on her father, mother or guardian, and no personal service was made on her, such service by mail being the only service made or attempted.

Did the court acquire jurisdiction of her person as a non-resident defendant? The proceeding was under the old Code of Procedure. Section 134 of that Code providing for the personal service of a summons, where the action was against a minor under the age of fourteen years, required the summons to be served by delivering a copy thereof to such minor personally, and also to his father, mother or guardian, or if there were none within the State then to any person having the care and control of such minor, or with whom he should reside, or in whose service he should be employed.

Then came the provision for service by publication in section 135. That was, that where the person on whom the service of the summons was to be made could not after due diligence be found within the State, the court or judge might grant an order that the service be made by publication of the summons where the defendant was not a resident of the State, but had property therein, and the court had jurisdiction of the subject of the action.

It was required that the order direct the publication to be made

in two newspapers, and that a copy of the summons and complaint be forthwith deposited in the post-office directed to the person to be served at his place of residence, where that was known. There is no requirement that these papers shall be sent to any person other than the infant in case of publication; and there is no reason why there should be. No distinction is made in this section between infants and adults, and it follows that a strict pursuit of the statute is sufficient to confer jurisdiction of either class of persons. It is within the competency of the legislature to prescribe the mode of acquiring jurisdiction of the person, and one mode is by publication. A guardian *ad litem* was regularly appointed for this infant defendant on motion of the plaintiff and he put in the usual answer.

The reason why the same particularity is not required where the infant defendant is served by publication and deposit is to be found in the effect and character of the judgment. In such case the defendant or his representatives on good cause shown may be allowed to defend within one year after notice of judgment, and within seven years after its rendition on such terms as may be just. The practice prescribed was followed strictly in the foreclosure action, and the judgment obtained was regular. No defect exists in the title, and this objection to it cannot be sustained. Our conclusion is that the defendant should perform her contract with the plaintiff, and that she is entirely safe in so doing. There should be judgment for the plaintiff for specific performance.

BARNARD, P. J., and PRATT, J., concurred.

Judgment for plaintiff upon submitted case, for specific performance.